UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

VICKIE D. MAGEE                                                          PLAINTIFF

VERSUS                                  CIVIL ACTION NO. 1:12CV00188-LG-JMR

COMMISSIONER OF SOCIAL SECURITY                               DEFENDANT

## REPORT AND RECOMMENDATION

Plaintiff, Vickie D. Magee ("Magee") filed a Complaint [1] on June 12, 2012 for judicial review of Defendant Commissioner of Social Security's ("Commissioner") denial of Magee's application for disability benefits under the Social Security Act. Before the Court is Magee's [11] Memorandum Brief to Order Directing the Filing of Briefs requesting that the Court reverse the decision of the Commissioner and remand the matter to the Administrative Law Judge (ALJ) for further consideration. The Government has filed a Memorandum in Opposition to Plaintiff's Response to Order [12]. The sole issue presented in this matter is whether the substantial evidence supports the ALJ's decision that the Plaintiff could perform her past relevant work and is therefore, not disabled.

On January 14, 2009, Magee filed her application for a period of disability and disability insurance benefits ("DIB") [10 pp.72,76]. The agency denied Plaintiff's application initially and on reconsideration [10, pp.41-44]. The Administrative Law Judge ("ALJ") Robert C. Allen held a hearing on November 2, 2011 [10, pp. 24-40]. The Appeal Council granted Plaintiff's Request for Review of the ALJ's decision [10, p.69]. On review, the Appeal Council denied Plaintiff's

1

applications for DIB and SSI on May 1, 2012 [10, pp.4-9]. Plaintiff has exhausted her administrative remedies and timely filed a civil action in this Court. The matter is ripe for review under 42 U.S.C.§§405(g), 1383(c)(3).

Magee was 56 years old at the time of the ALJ's determination [10, pp.31,387]. Plaintiff completed her high school education at Harrison Central High School [10, p.29] [11]. She attended Phillips Business College from 1972-1973 and where she studied data processing and received a certificate of completion [11]. Her past relevant work was as a part-time associate/customer service/sales representative at Sears Roebuck and Company for twenty-six years [10pp. 38, 98] [11]. Plaintiff alleges her disability began on January 1, 2003 [10, p.87].

On March 4, 2008, Dr. Daniel Jurusz examined Plaintiff at Memorial Hospital at Gulfport [10, p.144]. Plaintiff complained of left-sided flank pain for over four years. *Id* She related to Dr. Jurusz that the pain increased intensity over the last year but she had no left sided abdominal pain. *Id*. Dr. Jurusz noted Plaintiff had a history of hypertension. *Id* On examination, Plaintiff was well-developed, well-nourished, and her heart had a regular rate and rhythm [10, p.145]. On follow-up examination on March 20, 2008, a CT scan of Plaintiff's abdomen showed multiple gallbladder stones and a non-obstructing stone in her kidney. *Id* Dr. Jurusz impression was cholelithiasis with mild thickening of the gall bladder wall suggesting acute or chronic cholecystitis and a small umbilical hernia [10, p.148].

Nurse Karen Rimanich examined Plaintiff at CFHC–Gulfport on February 19, 2009 [10, p.159]. Nurse Rimanich noted Plaintiff's hypertension was controlled with anti-hypertensive medication [10, p. 159]. In her review of Mrs. Magee's systems, Plaintiff had no symptoms of fatigue, fever, chest pains, shortness of breath, or fainting spells [10, p.159]. Nurse Rimanich

2

diagnosed Plaintiff with unspecified essential hypertension. *Id* During her April 21, 2009 follow-up appointment, Plaintiff complained of stiffness and tightness in both legs [10, p.157]. On examination, Plaintiff's lower back was stable with a normal range of motion. *Id* The results of Plaintiff's straight leg raising test were normal. *Id* Plaintiff had normal range of motion, normal joint stability, and equal sensation in her lower extremities bilaterally. *Id* Plaintiff was diagnosed with unspecified essential hypertension and chronic pain. *Id*

Plaintiff's April 30, 2009 MRI showed "age appropriate [and] minimal end plate degenerative osteophytes of the lumbar spine" [10, p. 223]. There was no acute abnormality in Plaintiff's lower back and no evidence of asymmetric nerve root compression [10, p. 223].

On March 6, 2010, Plaintiff was admitted to Memorial Hospital at Gulfport for a questionable near - syncopal episode [10, pp.169, 234]. She underwent a holter monitor which showed no evidence of arrhythmia and a exercise stress echo which showed no ischema.[10, p.234]. She had a consult with neurology and was felt to have neuropathy. *Id* Her tilt table test was without evidence of pauses or syncope. *Id* She had a normal echocardiogram. She was discharged on March 9, 2010. *Id* On the day of admittance, the x-ray of Plaintiff's chest demonstrated mild versus borderline cardiomegaly with minimal pulmonary venous distension [10, p.254]. The next day, Plaintiff underwent a "vascular lower extremities deep venous thrombosis study procedure" [10, p.207]. The results of the studies were normal, showing no evidence of deep or superficial venous thrombosis [10, p.208]. Plaintiff also underwent a passive head up tilt test [10, p. 214]. Dr. Wakkas Tayara, the attending physician, noted Plaintiff had no symptoms of syncope [10, p. 214, 234]. However, Plaintiff tested positive for orthostatic hypotension[10, p. 214] affecting the right lower extremity and left tibial mononeuropathy affecting her left lower extremity [10, p. 176].

3

Furthermore, Plaintiff had borderline sural sensory responses. *Id*

On March 8, 2010, Dr. Chelsea Grow noted Plaintiff's past medical history included hypertension [10, p.185]. On review of systems, Plaintiff did not have chest pain, palpitations, or exertional angina [10, p. 186]. She did not exhibit signs of seizures, transient ischemic attack (TIA), weakness, vertigo, dizziness, headaches, confusion, or numbness in the feet. *Id* Plaintiff was oriented to person, place, and time [10, p.187]. Additionally, her attention and concentration were within normal limits [10, p.187]. Though Plaintiff had leg pain and lower back pain, she did not have arthralgias or myalgias [10, p. 186]. Dr. Grow further noted Plaintiff showed mild diminished sensation in both feet to light and pinprick touch [10, p.188]. Dr. Grow also noted Plaintiff had no prior history of TIA or stroke. *Id*

Dr. Grow's assessment and plan reflects Plaintiff had a "fall," "lower extremity numbness, suspected polyneuropathy," "a history of lumbalgia, chronic lower back pain," "a history of hypertension," and "lower extremity swelling, subjective" [10, p.188]. Dr.Grow's review included a discussion of Plaintiff's CT of the brain which was performed on March 6, 2010. Dr.Grow reported that an area in the right posterior frontal lobe of attenuation suggested possible chronic infraction. *Id* Plaintiff reported lower extremity weakness and sensory disturbance, which worsened over the past year [10, p.189]. Based on her examination, Dr. Grow opined that Plaintiff had polyneuropathy which is DSP (distal symmetric polyneuropathy). *Id* Dr. Grow recommended further nerve conduction studies to determine if she did have underlying polyneuropathy or peroneal mononeuropathy. *Id* Dr. Grow ordered an MRI of Plaintiff's brain to further clarify the subcortical right fronto parietal lesion which suggests chronic infraction. *Id*

That same day, Plaintiff had an MRI scan of her brain [10, p. 203]. The interpreting

4

examiner, Dr. James W. Keating, found that were a few scattered hyperintensities in the periventricular and centrum semiovale deep white matter having the appearance of chronic ischemic microangiopathy. *Id* He found that a defect found in the FLAIR study represents an old infract. *Id* He noted there was an area of "focal atrophy" in the right parietal lobe where the sulci were quite generous which was worrisome for an area of old peripheral infarct. *Id* He believed it might be related to a lesion in the posterior right frontal lobe. *Id* He reported no other evidence of abnormalities. *Id* Dr. Keating's impression was there were the areas of abnormal signal in the frontal lobe suggested a small area of old infarct [10, p. 204]. There was an area of localized widened sulci that were prominent suggesting an old infract. *Id* Additionally, he opined that Plaintiff had mild ischemic microangiopathy, but otherwise, her brain was normal. *Id*

On March 9, 2010, Dr. Tayara noted Plaintiff was monitored with a holter monitor, which showed no evidence of arrhythmia [10, pp.169,234]. She had an exercise stress echo which showed that she was at 85% of maximum of her predicted heart rate [10, pp.169, 234]. Plaintiff's echocardiogram demonstrated a normal left ventricular function [10, pp 169, 234]. Furthermore, Plaintiff did not show signs of pauses or syncope. *Id*

At the hearing, Plaintiff testified that she could do housework but the ALJ did not specify what type of house work was performed and she later stated that there was not much she could do around the house [10, p.33,34]. She stated that she went to church on Sunday and visited her disabled sister. *Id* She further testified that her feet were numb and felt like they were asleep. *Id* She stated that she had pain in her lower back that went down her legs and there were times that she felt weak, like she was going to fall when walking [10, p.37]. She explained that she fell in a store which is why she was admitted to the hospital [10, pp. 37-38].

5

The ALJ determined Plaintiff had not engaged in substantial gainful activity since her alleged onset date, January 1, 2003 [10, p. 18, Finding 2]. The ALJ further found Plaintiff had severe impairments of chronic pain, neuropathy in the lower extremity, and anxiety [10, p. 18, Finding 3]. The ALJ concluded that Plaintiff did not have an impairment that met or equaled a listing impairment [10, p.19, Finding 4]. The ALJ proceeded to find Plaintiff had the residual functional capacity ("RFC") to perform light work; however, he further limited her to unskilled or semi-skilled work [10, p 20, Finding 5]. Next, the ALJ, relying on Charles Miller's, a vocational expert (VE) [10, pp. 64-66], testimony determined Plaintiff could perform her past relevant work as a Sears Customer Service Representative [10, p 22, Finding 6]. Thus, the ALJ concluded Plaintiff was not disabled [10, p. 23, Finding 7].

On March 2, 2012, the Appeals Council sent Plaintiff a notice of review, granting Plaintiff's Request for Review of the ALJ's decision [10, p 69]. After considering the entire record, the Appeals Council found Plaintiff had not engaged in substantial gainful activity since January 1, 2003 [10,p. 8]. The Appeals Council determined Plaintiff had severe impairments of chronic pain and neuropathy lower extremity [10,p 8, Finding 2]. The Appeals Council further determined Plaintiff's alleged anxiety was not a severe impairment [10, p. 8]. The Appeals Council, then, found the impairments did not meet or equal a listed impairment [10, p.8, Finding 2]. Next, the Appeals Council determined Plaintiff had the RFC to perform light work at the semiskilled level [10, p.8, Finding 3]. The Appeals Council adopted the ALJ's adverse credibility determination [10, p. 8, Finding 4]. Finally, the Appeals Council found Plaintiff could perform her past relevant work as a customer service representative [10,p. 8-9, Finding 5]. The Appeals Council ultimately concluded Plaintiff was not disabled [10, p. 9, Finding 6].

6

The Court's review of the Commissioner's final decision is limited to an inquiry into whether the Commissioner applied the proper legal standards and whether substantial evidence in the record supports his decision. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012). "Substantial evidence is 'more than a mere scintilla. It means that such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'." *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court "may not re-weigh the evidence or substitute [its] judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision." *Jack v. Astrue*, 426 Fed.Appx. 243, 244-45 (5th Cir. 2011). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

Plaintiff bears the ultimate burden of proving she is disabled. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H)(I); 20 C.F.R. §§ 404.1512(a), 416.912(a) (2012). Social Security regulations provide for a five-step sequential evaluation process to determine. 20 C.F.R. §§ 404.1520, 416.920. Plaintiff bears the burden of proof in the first four steps. *Perez*, 415 F.3d at 461.

First, a claimant must establish she is not engaged in substantial gainful activity, as defined in the regulations. Second, the claimant must establish an impairment or combination of impairments that is severe. Third, if the claimant establishes impairment or combination of impairments meets or equals a listed impairment, the claimant will be found disabled. If not, the ALJ will determine if the claimant can engage in past relevant work. If the claimant can engage in past relevant work, the claimant is not disabled. If the claimant cannot do past relevant work, the ALJ must determine if there is any other work the claimant can do at step five. If the claimant cannot engage in any other

work, then she is considered disabled. 20 C.F.R. §§ 404.1520, 416.920.

At step two of the sequential evaluation, Plaintiff bears the burden of providing evidence that she has a severe impairment. 20 C.F.R. §§ 404.1512(a), 416.912(a); *Bowen v. Yuckert*, 482 U.S.137, 146 (1987); *Giles v. Astrue*, 433 Fed.Appx. 241, 246 (5th Cir. 2011). A severe impairment is an impairment that significantly limits a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985); *Brunson v. Astrue*, 387 Fed.Appx. 459, 461 (5th Cir. 2010). Furthermore, an impairment is "not severe if it is a slight abnormality or combination of slight abnormalities that has no more than a minimal effect on the claimant's ability to do basic work activities." *Brunson*, 387 Fed.Appx at 461 (citation omitted); *see* 20 C.F.R. §§ 404.1521(a), 416.921(a). An impairment must be severe for a continuous period of at least twelve months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a); *Barnhart v. Walton*, 535 U.S. 212, 217 (2002). The Appeals Council found Plaintiff had severe impairments of chronic pain and neuropathy in the lower extremity but that she did not have an impairment or combination of impairments which is listed in or which is medically equal to an impairment listed in 20 CFR § Part 404,Subpart P, Appendix 1. [10,p. 8].

The Appeals Council assessed Plaintiff's RFC to determine whether she could perform her past relevant work at step four of the sequential evaluation process [10,p.8]. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), (e), 416.920(a)(4)(iv), (e). The RFC is the Appeal's Council's determination of Plaintiff's best ability to perform work despite her limitations. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Plaintiff bears the burden of demonstrating how her impairments are disabling. 20 C.F.R. §§ 404.1512(c), 404.1545(a)(3), 416.912(c), 416.945(a)(3). The Appeals Council determined Plaintiff could perform light work at the semiskilled level [10, pp 8, 20].

Plaintiff contends the ALJ and the Appeals Council did not adequately consider her April 2009 diagnosis of degenerative osteophytes in her lower back and various diagnoses listed in the March 2010 records of Memorial Hospital at Gulfport [10, pp 223, 254],[11]. The Appeals Council's and ALJ 's decisions extensively considered the April 2009 and March 2010 medical evidence [10, pp. 7-8,21]. The Court finds that these records do not support Plaintiff's contention of having disabling limitations. The April 2009 medical report does not establish any additional functional limitations not already accounted for in Plaintiff's RFC [10, p.223]. Plaintiff's April 2009 MRI of her lower back revealed "age appropriate" and "minimal endplate degenerative, osteophytes of the [lower back]" [10, p.223]. The records do not indicate, moreover, that this "minimal" condition significantly limited Plaintiff's ability to perform basic work activities [10, p. 223]. An impairment is not severe if it does not significantly limit one's ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a). Furthermore, an impairment is "not severe if it is a slight abnormality or combination of slight abnormalities that has no more than a minimal effect on the claimant's ability to do basic work activities". *Brunson* 387 Fed.Appx. at 461. The ALJ further acknowledged the MRI showed there was a small disc protrusion at the L4-5 level, producing "minimal" flattening of the thecal sac [10, pp . 21, 223]. However, the ALJ noted in his decision that the MRI revealed "no acute abnormality" in Plaintiff's lower back [10, pp. 21, 223]. Therefore, the Court finds that the diagnosis of "age appropriate" and "minimal" degenerative osteophytes does not sufficiently demonstrate any additional severe impairments or greater limitations than found by the ALJ or the Appeals Council.

The March 2010 medical records from Memorial Hospital at Gulfport do not establish additional work-related limitations [10, pp 169, 176, 203-04, 214, 234, 254]. Plaintiff contends that

9

specific diagnoses from the hospital records in support of her claim: mononeuropathy in both lower extremities [10, p. 176]; syncopal episode, hypertension, old cerebrovascular accident, and neuropathy [10, pp. 169,234]; orthostatic hypotension [10, p, 214]; focal atrophy in the right parietal lobe, suggesting a site of old peripheral infarct [10, pp. 203-04]; and mild to borderline cardiomegaly with minimal pulmonary venous distension [10, p. 254],[11].

The ALJ evaluated the March 2010 records from Memorial Hospital at Gulfport, noting Plaintiff was admitted to Memorial Hospital for a fainting episode [10, pp. 21, 37-38, 169, 234]. Her stay in the hospital lasted from March 6, 2010 to March 9, 2010 [10, pp.169, 234]. The ALJ further found Plaintiff's attending physician, Dr. Tayara, diagnosed Plaintiff on her discharge date with syncopal episode without recurrence, ruled out seizure activity, and diagnosed atypical chest pain with normal exercise stress echocardiogram at 85% of maximum predicted heart rate [10, pp 21, 169, 234]. The ALJ also found Plaintiff was diagnosed with neuropathy [10, pp. at 8, 21, 169, 176-77, 234].

The ALJ found Plaintiff had a severe impairment of neuropathy in the lower extremity [10, pp. 8, 21, 176-77). Dr. Grow noted Plaintiff reported lower extremity weakness and sensory disturbance, which had gotten worse over the past year [10, p. 238]. On clinical examination, Dr. Grow found Plaintiff had asymmetric weakness in her left foot, which had lasted over a year at minimum. *Id* Dr. Grow further reported Plaintiff had mild diminished sensation in both feet to light and pinprick touch [10, p 242]. Dr. Grow ultimately opined Plaintiff had lower extremity numbness, which was suspected to be polyneuropathy [10, p. 242]. Consistent with Dr. Grow's examination, Dr. Tayara indicated Plaintiff "was felt to have neuropathy" [10, pp 169, 234].

Plaintiff failed to show with regard to the other March 2010 diagnoses what, if any, functional

10

limitations flowed from these other diagnoses. The mere presence of impairments is not disabling per se; plaintiff must show that she was so functionally impaired by her impairments that she was precluded from engaging in any substantial gainful activity. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). While Dr. Tayara have listed various diagnoses, he did not indicate Plaintiff had any functional limitations resulting from these conditions [10, pp 169, 234]; *Bordelon v. Astrue*, 213 Fed.Appx. 418, 422 (5th Cir. 2008)).

The medical records do not indicate that Plaintiff had severe impairments of syncope or orthostatic hypotension or any associated limitations. Dr. Tayara opined Plaintiff had a non-recurring syncopal episode [10, pp 214, 169, 234]. However, as the ALJ found, and the Government asserts in their Brief [12] that Plaintiff's single syncopal episode did not meet the twelve-month durational requirement for severe impairments. 42 U.S.C. §§ 423(d)(1)(A), 132c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 404.1509, 416.905(a), 416.909. *Walton*, 535 U.S. at 217 Impairment must be severe for a continuous period of at least twelve months. *Walton*, 535 U.S. at 217. Dr. Tayara characterized the syncope as non-recurring[10, pp. 169, 234]. Plaintiff's March 8, 2010 tilt test revealed no symptoms of syncope [10, p. 214]. Moreover, neurological consultant Dr. Grow reported Plaintiff had no prior history of stroke or TIA [10, p 188]. During Dr. Grow's March 8, 2010 examination, Plaintiff did not exhibit signs of seizures, weakness, TIA, vertigo, or dizziness [10, p. 186]. While the tilt test results indicated Plaintiff had signs of orthostatic hypotension, there is no evidence presented to the extent of the condition's severity or how the condition impacted her ability to work [10, p 214]. A Claimant must provide evidence showing how severe the impairment is and how it affected claimant's functioning during the time she alleges disability. *See* 20 C.F.R. §§ 404.1512(c), 416.912(c). Thus, the Court finds that Plaintiff did not meet her burden of showing these conditions

were severe or established greater functional limitations.

The Court further finds while the medical records established Plaintiff's medical finding of "focal atrophy" in her parietal lobe, the evidence presented does not demonstrate that this condition caused any functional limitations [10, p 203], [11]. Dr. Keating noted the MRI of Plaintiff's brain showed focal atrophy in the right parietal lobe and opined the atrophy was related to a lesion in the right frontal lobe of Plaintiff's brain [10, p. at 203]. He further reported that Plaintiff had a "small area of old infarct" in her frontal lobe and mild microangiopathy [10, p. 204]. Dr Keating found her brain appeared to be otherwise normal. *Id.* Dr. Keating did not opine Plaintiff had any neurological deficits or that the atrophy caused any physical or mental restrictions [10, p. 203]. Dr. Grow found that Plaintiff was oriented to person, place and time [10, p 187]. She had normal attention span and concentration *Id.* The Court finds that these medical reports do not establish any additional severe impairments or call for greater restrictions in her RFC.

Plaintiff asserts that she is disabled due to her diagnoses of chest pain and mild to borderline cardiomegaly with minimal pulmonary venous distension and hypertension [10, pp. 169, 234, 254], [11]. The ALJ found and the Government contends in its Brief [12] that based on Dr. Tayara's and Dr. Grow's objective medical findings, Plaintiff's conditions are, at most, minimal [10, pp 169, 186, 234]. Dr. Tayara reported Plaintiff's echocardiogram showed Plaintiff had no ischemia at 85% of her maximum predicted heart rate [10,pp 169, 234]. Plaintiff also had a normal left ventricular function *Id*. Additionally, Dr. Grow found after examination that Plaintiff exhibited no chest pain, palpitations, or exertional angina [10, p.186]. Although Plaintiff was diagnosed with hypertension [10, p. 230], the ALJ found and the Government asserts [12] that the medical record from February 2009 at CFHC-Gulfport showed Plaintiff's hypertension was well-controlled with anti-hypertensive

medication. which would not result in any disability from hypertension [10, p. 159]. A medical impairment that can reasonably be controlled by medication is not disabling. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988)). If claimant's symptoms were reasonably well-controlled with medication then the symptom is not disabling. *Palomo v. Barnhart*, 154 Fed.Appx. 426, 430 (5th Cir. 2005)). The Court finds Plaintiff failed to show these diagnosed conditions significantly impacted her ability to work. Thus, the Court further finds that substantial evidence supports the ALJ's severe impairment and RFC determinations

With regard to the Plaintiff's testimony regarding her condition, a claimant's testimony of pain or other symptoms alone is not sufficient to establish disability. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H)(i). "Subjective complaints of pain must also be corroborated by objective medical evidence." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). When a claimant alleges disabling symptoms, the ALJ must first determine whether there is a medically determinable physical or mental impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Ward v. Barnhart*, 192 Fed.Appx. 305, 309-10 (5th Cir. 2006). If the Commissioner finds such an impairment, then he must evaluate the intensity and persistence of the alleged symptoms and determine how they limit the claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(b), 416.929(b). The Commissioner will consider several factors, including the claimant's testimony, her daily activities, her treatments, and any inconsistencies between the claimant's testimony and other relevant evidence. *See* 20 C.F.R. §§ 404.1529(b), 416.929(b); *Ward*, 192 Fed.Appx. at 310. Moreover, "a fact finder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Dominguez v. Astrue*, 286 Fed.Appx. 182, 186 (5th Cir. 2008) .

The ALJ found Plaintiff's subjective complaints were not credible to the extent they were inconsistent with the RFC assessment [10, pp. 8, 20-21]. The ALJ considered Plaintiff's subjective complaints in light of the medical evidence of record in evaluating her credibility [10, p. 21]. "An ALJ may discount a claimant's subjective complaints when the alleged impairments contradict the medical evidence." *Hernandez v. Astrue*, 278 Fed.Appx. 333, 340 (5th Cir. 2008). At the hearing, Plaintiff testified she had numbness in her legs, affecting her ability to walk, as well as pain in her lower back and legs [10, pp. 36-37]. The ALJ found and the Government contends in their Brief [12] that Dr. Grow reported Plaintiff walked normally, with no signs of gait dysfunction during her March 2010 examination [10, p. 242]. The ALJ found that the March 2010 medical reports indicated Plaintiff had no signs of deep or superficial vein thrombosis and no evidence of arthralgias, myalgias, or swelling in her extremities [10, pp 21, 176, 186, 208]. The Government further contends [12] that Plaintiff exhibited normal straight leg raises, had equal sensation in both of her lower extremities, and no tenderness on palpation in her examination in April of 2009 [10, pp. 21, 157] [12]. The Government asserts [12] that the April 2009 examination Plaintiff had normal joint stability and normal range of motion in both of her lower extremities [ 10, p. 157].

The Government alleges [12] that Plaintiff's report of her daily living activities undermines her contention of disabling symptoms and supports the ALJ's RFC determination. The ALJ may consider a claimant's daily activities in evaluating claimant's subjective symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Dr. Grow noted Plaintiff's report of occasionally assisting her husband with his car detailing business [10, p. 241]. In addition, at the hearing, Plaintiff testified her husband ran his car washing business at their home [10, pp 20, 32]. Additionally, Plaintiff testified she would do housework, attend church on Sundays, and occasionally visit her sister [10, p 33].

Therefore, the Court finds that the ALJ properly determined Plaintiff's subjective complaints were less credible [10, pp. 8, 21].

In conclusion, the Court finds that the ALJ used the proper legal standards and that his opinion is supported by substantial evidence. Based on the foregoing, the Court recommends that the Plaintiff's appeal be dismissed with prejudice; and, that Final Judgement in favor of the Commissioner be entered.

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the Report and Recommendation that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SO ORDERED**, this the 18th day of July, 2013.

*/s/ John M Roper, Sr*
CHIEF UNITED STATES MAGISTRATE JUDGE